# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **MICHAEL D. GREENE,** | Case No. 3:18 CV 1507 |
| Plaintiff, | Judge Jack Zouhary |
| v. | Magistrate Judge James R. Knepp II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Michael D. Greene ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated July 5, 2018). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in May 2014, alleging a disability onset date of December 30, 2010. (Tr. 201-13). His claims were denied initially and upon reconsideration. (Tr. 143-48, 151-55). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 156). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the

ALJ on March 30, 2017. (Tr. 35-51).[1] On July 17, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 17-29). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on July 3, 2018. (Doc. 1).

FACTUAL BACKGROUND[2]

Personal Background and Testimony

Born in 1978, Plaintiff was 32 years old on his alleged onset date. *See* Tr. 201. In his application, Plaintiff alleged disability due to congestive heart failure, high blood pressure, sleep apnea, and asthma. (Tr. 236).

In an October 2014 disability report, Plaintiff reported his "depression ha[d] gotten worse"; it was hard for him to get out of bed, and he disliked going out in public "for fear of the way people look at me". (Tr. 244, 247). In a function report completed later that month, Plaintiff reported he went outside daily and shopped for groceries once per week for about an hour. (Tr. 253). When asked how long he could pay attention, he responded, "no problem with that"; he could finish things he started and reported "no problem" following spoken instructions. (Tr. 255). Regarding his ability to handle stress or changes in routine, he wrote "good". (Tr. 256).

At the ALJ hearing, Plaintiff testified he last worked in 2010, delivering pizzas. (Tr. 38). He had also been a DJ, but had never been paid for it. (Tr. 39). Plaintiff testified to physical problems with sleep apnea, back pain, and knee pain. (Tr. 40-43).

---

1. Plaintiff originally appeared at a hearing on November 17, 2016, but that hearing was adjourned to allow Plaintiff to obtain counsel. *See* Tr. 67-74.

2. Plaintiff's arguments relate only to his mental health impairments. *See* Doc. 11. Therefore, the undersigned only summarizes those records, including Plaintiff's testimony, relevant to those arguments. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in opening brief waived).

Plaintiff described difficulty with his temper, explaining that "[m]ostly like on the days when the pain's real bad, I just don't even want to be bothered." (Tr. 44). He was "very irritable" and would "snap at people, even though it's not their fault." *Id.*

Plaintiff also testified to memory problems, explaining that he did not always remember to take his medications. *Id.* ("Like sometimes I go a week without if I don't remember. I usually like try to make sure that I take them once a day if they're twice a day.").

Plaintiff also had difficulty concentrating, explaining that he would sometimes "leave the room and come back and like forget what I was doing or what I got up"; he described himself as "kind of scatterbrained." *Id.* He did not read books due to concentration issues. *Id.* He did watch television, but did not "have the attention span to really sit through anything long." (Tr. 45).

Plaintiff described social anxiety, and always feeling as though people are judging him. *Id.* For this reason, he only left the house two or three times per week; when he did go out, he went alone. *Id.* He felt overwhelmed "if anybody is . . . depending on [him] and putting a lot of pressure on [him]". (Tr. 45-46).

Plaintiff did not get up and shower every day; he stayed in bed all day about three or four times per week, and had nightmares about once per week. (Tr. 46).

Relevant Medical Evidence

In April 2011, Plaintiff underwent a psychological consultative examination with Don McIntire, Ph.D. (Tr. 428-30). Therein, Dr. McIntire found Plaintiff "not significantly limited" in any area of functioning. (Tr. 428). At that time, Plaintiff self-reported "no history of depression or anxiety." (Tr. 429).

In February 2015, Plaintiff underwent another psychological consultative examination with Dr. McIntire. (Tr. 389-96).[3] Plaintiff arrived early to the appointment, having driven himself. (Tr. 389). He reported that this was the first time attending an appointment on his own. *Id.* Plaintiff lived on his own after his mother had recently moved in with her boyfriend. (Tr. 390). Plaintiff graduated from high school, receiving average grades. *Id.* He had most recently worked as a DJ, working at a club for four or five years until 2012 when he was hospitalized for congestive heart failure. *See* Tr. 390-91. He stated he "had been anxious while working as a DJ." (Tr. 390). He also reported past work in a pizza shop for seven years. *Id.* He reported not having learning difficulties in employment, but did have concentration difficulties. *Id.* He got along well with customers and coworkers. *Id.* Plaintiff saw his mother occasionally, but not other family members; he did not socialize with friends. *Id.* Plaintiff stated he was "anxious and self-conscious when he is around other people and he admitted that he often thinks others are judging him and are talking about him." (Tr. 391). He stated he could not go to the store, walk in his neighborhood, or take the bus alone. *Id.* Plaintiff had never been in counseling or been hospitalized for mental health issues. *Id.*

On examination, Dr. McIntire observed that Plaintiff did not exhibit any unusual tics or mannerisms. (Tr. 392). He had no difficulty comprehending questions or expressing himself, and his speech was clear and understandable. *Id.* He "presented with a normal range of emotions", but reported frequently feeling down, and having occasional crying spells. *Id.* He stated he sometimes remained in bed for a day, failed to attend to personal hygiene, and had loss of appetite. *Id.* He reported worrying obsessively about everything, leading to insomnia; he reported four to five hours of sleep per night. *Id.* He also reported nightmares, night sweats, flashbacks, and intrusive memories related to past abuse. (Tr. 393). He was anxious and self-conscious in public. *Id.*

---

3. This record is duplicated at Tr. 472-79.

Plaintiff's thinking was lucid and logical. *Id.* He had "no major difficulties with long-term memory and gave adequate details and dates." *Id.* However, he reported he occasionally forgets to finish tasks, and had difficulty with short-term memory and concentration. *Id.* He was able to recall a list of three items after five minutes, recall six digits forward, recall five digits in reverse, spell a word in reverse, count to 40 by threes, and subtract from 100 by sevens. *Id.* Dr. McIntire noted Plaintiff appeared to be of average intelligence. *Id.*

Dr. McIntire diagnosed major depression, single episode, severe without psychotic features; social anxiety disorder; and generalized anxiety disorder. (Tr. 395). He opined Plaintiff could understand, remember and follow basic, abstract, and multi-step instructions. *Id.* His ability to maintain attention and concentration to perform simple, repetitive tasks was "fairly good", and his performance on slightly more complicated tasks was also "good". *Id.* His ability to get along with coworkers was "good as he has never had difficulties and he admitted that he did well with customers." (Tr. 396). Dr. McIntire also noted:

> [Plaintiff] had been anxious as a DJ but had been able to work in spite of this anxiety. He was mildly anxious with the examiner but interacted well. He claims that he has had some difficulties in keeping appointments due to his anxiety and that this had been the first appointment that he had kept without accompaniment.

*Id.* Finally, Dr. McIntire opined Plaintiff's "ability to manage the stress of everyday work life is limited by his tendency to avoid anxiety-evoking situations." *Id*. However, Dr. McIntire noted, "[o]n the other hand, he has been able to seek medical care but he has not sought help for his emotional difficulties. He may find work stress to be overwhelming from time to time." *Id.*

In February 2015, State agency reviewing psychologist Cynthia Waggoner, Psy.D., reviewed Plaintiff's records and opined he had severe impairments of anxiety disorders and affective disorders. (Tr. 133). She found Plaintiff was mildly limited in his activities of daily living, maintaining social functioning, and moderately limited in maintaining concentration, persistence,

or pace. *Id.* In her mental residual functional capacity assessment, she opined Plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration, and complete a normal workday and workweek. (Tr. 138-39). She explained that he could "complete short cycle work tasks that do not require adherence to strict time or production demands." (Tr. 139). She also opined Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, explaining that he could "adapt to infrequent changes in a relatively static work environment. *Id.* Dr. Waggoner assigned great weight to Dr. McIntire's opinion. (Tr. 135). Based in this assessment (and the assessment of Plaintiff's physical limitations), Plaintiff was determined to be not disabled. (Tr. 141).

Notes from Plaintiff's primary care physician contain references to a history of depression, and a prescription for Paxil. *See, e.g.*, Tr. 504. These notes also indicate he traveled to Mexico sometime around May 2014 and again around May 2016. *See* Tr. 411, 506.

VE Testimony

A VE also appeared and testified at the ALJ hearing. (Tr. 46-50). The ALJ asked the VE to consider a hypothetical wherein Plaintiff could perform work consistent with the RFC he ultimately determined. (Tr. 47). The VE opined that unskilled sedentary jobs would be available, such as addresser, document preparer, and inspector. (Tr. 47-48). The VE also testified that to sustain full-time competitive employment, an individual could miss (or be late, or leave early) less than one day per month. (Tr. 49).

ALJ Decision

In his July 17, 2017 decision, the ALJ found Plaintiff met the insured status requirements for DIB through September 30, 2014, and had not engaged in substantial gainful activity since his alleged onset date. (Tr. 19). He found Plaintiff had severe impairments of congestive heart failure,

high blood pressure, sleep apnea, asthma, obesity, and lumbar back impairment. *Id.* The ALJ

analyzed Plaintiff's mental impairments, but concluded they were non-severe. (Tr. 20-21). The

ALJ then set forth Plaintiff's residual functional capacity:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) except he can lift/carry and push/pull 20 pounds
> occasionally and 10 pounds frequently; he can sit for six hours out of an eight hour
> workday; and stand and walk two hours each out of an eight hour workday; with
> only occasional climbing of ramps and stairs, but never any ladders, ropes, or
> scaffolds; occasional stoop, crouch, kneel, and crawl, with occasional exposure to
> moving machinery or unprotected heights; and only occasional exposure to dusts,
> fumes, and gases, extreme cold, extreme heat, and humidity.

(Tr. 23). The ALJ concluded Plaintiff could not perform his past relevant work, but given his age,

education, and experience, could perform other jobs that exist in significant numbers in the

national economy. (Tr. 27-28). Therefore, the ALJ found Plaintiff not disabled. (Tr. 28).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence

is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*,

474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or

indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn

"so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if he can perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the

8

duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff contends, in essence, that the ALJ erred in not including any mental limitations in the RFC. Within this argument, he asserts the ALJ erred in not finding severe mental impairments at Step Two, and erred in evaluating the mental health opinion evidence. For the reasons discussed below, the undersigned finds no error, and recommends the Commissioner's decision be affirmed.

Step Two

A severe impairment is one which significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is only considered non-severe if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at Step Two and proceeds through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("[S]o long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error[.]"); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (holding that as long as ALJ considers all impairments, failure to deem a single impairment non-severe is "legally irrelevant").

The ALJ here considered Plaintiff's mental impairments, both at Step Two (Tr. 20-21), and later in at Step Four (Tr. 25) (subjective symptom analysis discussing ability to attend doctor's

9

appointments "outside the home with no noted acute distress", lack of mental health treatment, and fact that travel "require[d] . . . mental demands above that to which he testified being capable"); Tr. 27 (evaluating mental health opinion evidence). Therefore, the failure to identify Plaintiff's mental health issues as severe is not reversible error. *See, e.g., Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 598 (6th Cir. 2018) ("Because the ALJ considered these impairments in the remaining disability analysis, we find it unnecessary to decide whether the ALJ erred in classifying [plaintiff's] mental impairments as non-severe at step two . . . Thus, to the extent the ALJ's failure to consider [plaintiff's] mental impairments was erroneous, any error was harmless due to the ALJ's consideration of her mental impairments in the remaining steps of the disability analysis.").

Opinion Evidence

Plaintiff also contends the ALJ erred in his consideration of the opinion evidence (which was the only mental health evidence in the record).

First, Plaintiff argues the ALJ committed a procedural error when he "did not discuss whether Dr. McIntire's opinions were entitled to great weight, or some weight, or no weight." (Doc. 11, at 7); *see also id.* at 7-8 ("[T]he ALJ did not articulate what weight was being accorded to Dr. McIntire's findings. The ALJ did not explain whether those opinions were being credited or discredited. There is no way of knowing whether the ALJ believed that Dr. McIntire's findings supported the residual functional capacity."). The undersigned disagrees.

The Social Security Administration promises ALJs "will evaluate every medical opinion [they] receive." 20 C.F.R. §§ 404.1527(c), 416.927(c). "Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, the rules . . . require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . . [ALJs] . . . are not bound by [these] findings . . . but they may not ignore these

10

opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996

WL 376180, at \*2.

In his analysis of the mental health opinion evidence at Step Four, the ALJ explained, *in*

*toto*:

> The mental health opinions, addressed in part in the section above, have also been considered. The State agency opinions at B7A and B9A are accorded some weight. The consultants opined the claimant had moderate limitation found at concentration, persistence or pace, related to moderate limitation in carrying out detailed instructions and maintaining concentration and attention for extended periods. He also had moderate limitation responding appropriately to changes in the work setting. Because the claimant does not have mental health treatment, the opinions were based upon the *psychological consultative examination*, discussed in the section above when considering the severity of mental impairments. Little weight is given to the *consultative opinion* of more than mild limitations, as previous and subsequent records do not support complaints of or treatment for such symptoms. The claimant explicitly denied difficulty with stress and has not pursued mental health treatment other than medications from his general physician.

(Tr. 27) (emphasis added). The undersigned finds that in this paragraph, the ALJ sufficiently

distinguished between "the *State agency* opinions at B7A and 9A" and the "psychological

*consultative* examination, discussed in the section above [in Part Two]" / "the *consultative*

opinion". *Id.* That is, the undersigned finds that the statement of "little weight" assigned to the

"consultative opinion" refers to Dr. McIntire. *See id.* This is made particularly clear by the ALJ's

use of the singular noun "opinion" in contrast to his earlier plural use of the word "opinions" when

referring to the State agency reviewing opinions.[4] *See id.* Moreover, the ALJ distinguished

between assigning "some weight" to Dr. Waggoner's opinion ("[t]he State agency opinions at B7A

and B9A") and "little weight" to Dr. McIntire's ("the consultative opinion of more than mild

---

4. In fact, these "opinions" are duplicate decisions at the reconsideration level (both authored by Dr. Waggoner), one denying SSI and one denying DIB; but there are two of them, with separate exhibit numbers. *See* Tr. 119-20, 138-39.

limitations"). *Id.* The undersigned therefore finds Plaintiff has failed to establish reversible error on this point.[5]

Second, Plaintiff argues that the ALJ erred in formulating an RFC without mental restrictions, by rejecting the mental health opinion evidence of record, which indicated Plaintiff had some limitations. (Doc. 11, at 8) ("Here, the record is uncontradicted. Mr. Greene suffers from a severe mental health impairment that imposes specific work-related functional limitations."). In Reply, Plaintiff presents an argument unaccompanied by case law support, but which certainly holds some logical appeal. He argues the Social Security Administration determined there was not sufficient evidence to evaluate Plaintiff's mental impairments (because of a lack of treatment records) and therefore, it ordered a consultative examination. However, the ALJ then rejected the opined mental restrictions from that examination due to lack of treatment. Plaintiff questions: "If the consultative examiner's opinions were just going to be rejected due to lack of treatment, then why even waste the resources to schedule the examination in the first place?" (Doc. 15, at 2).

Despite the initial logical appeal, the undersigned finds Plaintiff's argument fails and the ALJ's decision to discount the mental health opinion of record is supported by substantial evidence.

---

5. Moreover, even if Plaintiff's reading were correct and the ALJ failed to explicitly weigh Dr. McIntire's opinion, it would be harmless error. *See Friend v. Comm'r of Soc. Sec.*, 375 App'x 543, 551 (6th Cir. 2010). This is so because the Sixth Circuit has found a failure to weigh opinion evidence (specifically, treating physician opinion, which is entitled to more deference than a consultative opinion), is harmless "when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* Here, Dr. McIntire is not a treating physician, but a one-time examining physician. And, as discussed further herein, the ALJ thoroughly discussed Dr. McIntire's opinion at Step Two, noting where he found it unsupported or inconsistent with other record evidence. *See* Tr. 20-21. Furthermore, the ALJ's reasoning for discounting Dr. Waggoner's opinion, which was based on Dr. McIntire's opinion, can be applied to Dr. McIntire's opinion.

Preliminarily, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *see also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment."). Accordingly, the ALJ bears the responsibility for determining an RFC based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This determination, like all other findings made by the ALJ, must be supported by substantial evidence. 42 U.S.C. § 405(g); *Walters*, 125 F.3d at 528. Additionally, although an ALJ must consider and weigh all medical opinion evidence, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), opinions of consultative examiners are not entitled to any presumptive weight, *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).

Here, at Step Two, in finding Plaintiff's mental health impairments non-severe, the ALJ thoroughly explained his determination:

> The claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
>                         * * *
>
> The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation. He testified that his memory is not good, and he sometimes forgets to take his medicines. He may go a week without taking them, but he usually tries to get them in once a day However, on examination, his ability to understand, remember and follow basic instructions as good (Ex. B5F/7). He does not complain of difficulties to his own treating physician

13

and does not seek counseling (Exs. B5F, B22F). His doctor does not report issues with compliance related to not remembering to take medications. Id.

The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant testified to snapping at others, but attributed this to pain rather than to problems with depression and anxiety. Moreover, Dr. McIntire noted that the claimant had never had difficulties and admitted that he did well with customers (Ex. B5F/8). The claimant also reported that [he] had been able to work as a DJ despite being anxious. The claimant has not advised doctors that it is difficult for him to leave his house (Exs. B6F; B22F).

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation. The claimant has been diagnosed with depression since 2012, has taken psychotropic medication, and testified to some difficulty with attention and concentration. However [he] previously denied difficulty with memory in 2014, completing tasks and concentration, with no subsequent reported increase in symptoms (Ex. B6E/6). A psychological consultative examination in 2011 revealed no difficulties (Ex. B10F); psychological consultative examination in 2015 noted difficulty with slightly more complicated tasks that require mental manipulation of information, he performed fairly well. Moreover, the claimant has not sought treatment or complained of difficulties related concentration, persistence, or pace to his physician (Exs. B5F; B22F).

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant has been able to seek medical care despite anxiety (Ex. B5F/8). While Dr. McInt[i]re noted he may have difficulties handling stress, the claimant contradicted the assessment when he reported in 2014 that he was good at handling stress and changes in routine (Ex. B6E). This is further contradicted by the claimant traveling and working as a DJ despite the conditions. Dr. McInti]re's earlier assessment from 2011, noted no significant limitation, and the lack of subsequent mental health treatment outside of medication from his general physician, suggests the findings showing more than mild limitation were fleeting.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(Tr. 20-21). Although the ALJ relied in part on Plaintiff's lack of mental health treatment, this was not the only factor. The ALJ also considered Plaintiff's own self-reports of his abilities, and the earlier opinion evidence of record. *See id.* And later in his opinion, the ALJ (in discussing Plaintiff's subjective symptom reports) pointed to additional inconsistencies:

14

Specifically, the claimant alleges he is unable to leave his house, however he regularly attends doctor appointments outside the home with no noted acute distress. Moreover, he performed a few notable activities that belie the allegation of being largely homebound. He told Dr. McInt[i]re that he was able to work occasionally as a DJ despite feeling anxious, which requires engagement with others and would likely result in him being on his feet. Moreover, he traveled to Mexico for a week during the relevant period, which requires physical and mental demands above that to which he testified being capable (Ex. B6F/3, 14). Notably, he does not report significant distress to Dr. Reddy, and has not sought mental health treatment outside of that with Dr. Reddy.

(Tr. 25). These identified inconsistencies are supported by the record, and the undersigned finds the ALJ provided substantial evidence for rejecting the mental health opinion evidence. *See, e.g.*, Tr. 255 (October 2014 self-report of no difficulties with attention, persistence, or following instructions); Tr. 428-30 (April 2011 consultative examination with Dr. McIntire wherein he found Plaintiff had no significant limitations); Tr. 411 (report of trip to Mexico around May 2014); Tr. 506 (report of trip to Mexico around May 2016); *see also generally* Exhibit 6F, Tr. 398-421 and Exhibit 22F, Tr. 503-14 (treatment notes from Plaintiff's primary care physician lacking significant mental health complaints or notations of mental limitations). The relevant regulations for evaluating opinion evidence dictate that consistency with the record as a whole is a factor to evaluate in weighing medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4).

The Sixth Circuit has recognized that "ALJ's must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate–Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). But where there is no evidence that explains the lack of treatment, an ALJ may properly rely on the lack of treatment as a factor in evaluating a claimant's limitations. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("[U]nlike in *Pate–Fires*, there is little or no evidence expressly linking [plaintiff's] mental limitations to such repeated

noncompliance."); *see also Kestel*, 756 F. App'x at 599. As such, the Sixth Circuit in *White* concluded that "there [was] no evidence in the record explaining [the plaintiff's] failure to seek treatment during this half-year gap [and] [a] 'reasonable mind' might therefore find that the lack of treatment . . . indicated an alleviation of [the plaintiff's] symptoms." 572 F.3d at 283–84.

Thus, courts have found no error when there is no evidence connecting a Plaintiff's noncompliance or lack of treatment to the mental health disorder itself. *See Cole v. Comm'r of Soc. Sec.,* 105 F. Supp. 3d 738, 743–44 (E.D. Mich. 2015) (finding no error where the ALJ relied on the fact that the plaintiff "never sought or received formal mental health treatment" and that no physician had referred the plaintiff to a mental health specialist for treatment); *Coleman v. Comm'r of Soc. Sec.*, 2016 WL 3209660, *9 (S.D. Ohio) (citing *White* and finding no error in an ALJ's consideration of plaintiff's lack of mental health treatment when "there [was] no evidence in the record to explain why plaintiff never sought mental health treatment until he was actively pursuing disability benefits"); *Bass v. Colvin*, 2015 WL 1299266, *22 (N.D. Ohio) (finding no error in consideration of plaintiff's failure to obtain treatment and take medication where plaintiff did not identify evidence that these were a result of his mental condition); *Ross v. Comm'r of Soc. Sec.*, 2013 WL 1284031, *13 (N.D. Ohio) ("Plaintiff did not provide any evidence linking her mental illness to noncompliance[.]").

As in these cases, the undersigned finds the ALJ here reasonably relied – in part – on Plaintiff's lack of mental health treatment in the relevant time period in determining the opinion evidence was entitled to less weight. Indeed, as Dr. McIntire himself noted, "[o]n the other hand, he has been able to seek medical care but he has not sought help for his emotional difficulties." (Tr. 396).

16

For these reasons, he undersigned finds the ALJ's decision not to include mental limitation in the RFC, and explanation for discounting more than mild limitations in both Dr. McIntire's and Dr. Waggoner's opinions is supported by substantial evidence. This is so even though Plaintiff can point to contrary evidence in the record. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (court must affirm "so long as substantial evidence also supports the conclusion reached by the ALJ"). Therefore, the undersigned recommends the Commissioner's decision be affirmed.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.


 s/ James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).